POLEN, C.J.
Joseph Sorota, as Trustee of the Joseph Sorota Trust, timely appeals after the court entered final judgment against it on Belmat’s action for breach of a commercial lease agreement between the parties. Of the three points he raises on appeal, we reverse on two. We hold the trial court’s interpretation of the contract was erroneous and, therefore, reverse.
Sorota owns a building consisting of a warehouse and office in West Palm Beach. Belmat leased part of the building to use as a grocery store. The term of the lease was five years with an option by Belmat to extend it for another five years. Although the lease was signed in February, 1996, Sorota did not require Belmat to pay rent immediately.
Paragraph 13 of the lease provided that Belmat would pay Sorota advance rent of $10,000 so that Sorota would “use its best efforts” to make nine specific improvements to the space at its expense, including “separate electric and water service by separate meter,” within six months after obtaining plans and permits by Bel-mat. Paragraph 18 of the lease provided that Belmat would be responsible for paying all utilities used in connection with its space, but would pay its pro-rata share of such utilities “if the bill for such utility encompasses more than the leased Premis *976 es or the parking area used therewith. . ."
It is undisputed that Sorota did not install separate water and electric meters. Belmat later sued Sorota for breach of contract in which it sought damages for lost profits and “for [Sorota’s] failure to pay for necessary improvements made to the leased premises pursuant to the lease.”
Before the case was tried, Belmat sought leave to amend its complaint. Bel-mat wanted to add that Sorota breached the agreement by failing to pay its pro-rata share of electric, water, sewer, and garbage collection charges. The court denied leave to amend. However, at trial, Belmat was allowed to inquire into the alleged overpayment of the water and electric bills, as well as who paid the electric bill for the building and the amount of the bills. Notwithstanding its prior ruling, the court held such evidence was relevant to prove Belmat’s damages.
The court awarded Belmat $6,750.39 for improvements made that Sorota failed to complete or did not pay; $10,600 representing four months’ rent for Sorota’s delay in completing the improvements; and $65,717.96 representing 63% of the electric and water bills Belmat had paid, as well as full reimbursement of electrical deposits it paid. The court held that because Sorota did not install meters, “the greater weight of the evidence supports Belmat in their [sic] position that the electric and water charges should be on a pro rata [share of utilization] based on square footage.... ” This appeal followed.
Sorota contends the court misinterpreted Paragraph 18 of the contract. Paragraph 18 provides,
Tenant shall pay all utility charges furnished on the leased premises, or used in connection therewith, during the term and extension of this Lease, including electricity, telephone, water, gas, sewer, garbage and trash collection, and any storm drain charges, if any. Tenant shall pay its pro-rata share of any of these utility charges if the bill for such utility encompasses more than the leased Premises or the parking area used therewith....
Sorota reasons under Paragraph 18, Bel-mat was responsible for charges based on its actual usage of those utilities, not based on square footage.
There is no ambiguity in Paragraph 18; the contract states matter-of-factly that the tenant (Belmat) shall be responsible for paying utilities it uses in connection with the leased premises, but only its pro-rata share of those charges. Although not spelled out in the agreement, it appears clear that by “pro-rata share” of the bill, the drafters intended that the tenant pay only for those utilities it actually used. No other interpretation would make sense. See generally Am. Employers’ Ins. Co. v. Taylor, 476 So.2d 281 (Fla. 1st DCA)(holding contracts should be interpreted so as to avoid an absurd result), cause dismissed, 485 So.2d 426 (Fla.1985).
Belmat argues the problem with this analysis is the fact that Sorota breached its agreement to provide the separate meters. Belmat implies meters were the only mechanism by which to account for those pro-rata charges and, thus, that the trial court used the next-best approach to calculate damages. The problem with Belmat’s analysis is that it introduced no evidence that meters were the only mechanism available. In fact, Sorota introduced evidence supporting that actual usage could have been determined. Because Belmat did not satisfy its burden of showing that there was no conceivable way to measure its actual pro-rata usage of the utilities, we hold the trial court applied the wrong standard of calculation.[1]
*977 As to the other issues raised in this appeal, we affirm as unpersuasive.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.
KLEIN and TAYLOR, JJ., concur.

. Moreover, and as Belmat concedes, the final judgment erroneously awarded Belmat *977 $3,765 as reimbursement for its electrical deposits; the evidence showed the amount was only $3,675. This should also be corrected in any subsequent Amended Final Judgment.